FILED

2022 Nov-10  PM 05:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

HUNTSVILLE SENIOR SERVICES, LLC )
d/b/a REGENCY RETIREMENT )
VILLAGE OF HUNTSVILLE, )
                                  )
     Plaintiff, )
                                    )
v. )     Case No. 3:22-CV-01347-LCB
                                    )
THE ALABAMA DEPARTMENT OF )
PUBLIC HEALTH, SCOTT HARRIS, )
M.D., in his official capacity as STATE )
HEALTH OFFICER )
                                    )
     Defendants. )

## AMENDED COMPLAINT

In accordance with Federal Rule of Civil Procedure 15(a)(1)(A), Plaintiff Huntsville Senior Services, LLC d/b/a Regency Retirement Village of Huntsville (Regency) files this amended complaint against Defendants the Alabama Department of Public Health and Scott Harris, M.D., in his official capacity as State Health Officer:

## INTRODUCTION

1.    Regency operates the Regency Retirement Village of Huntsville in Huntsville, Alabama. The Regency Retirement Village provides different living arrangement options for senior citizens on one campus that offers a continuum of care from senior independent living (which is not required to be state licensed), to

assisted living, skilled nursing, and specialty assisted living facilities, all of which are required to be licensed and, in fact, are licensed by the State of Alabama.

2.      Numerous Madison County, Alabama senior citizens live in some 83 senior independent-living apartments at the Regency Retirement Village. They pay rent for these apartments and sign a lease like any other tenant. Nearly 60 of those residents have—on their own and as a matter of their own medical care—chosen to receive some sort of assistance with their activities of daily living or other personal care issues. Notably, Regency does *not* provide this assistance to these residents. Rather, the residents obtain those services from third-party providers. Regency operates simply as a landlord that leases space to these residents.

3.      Without giving Regency any notice or an opportunity to be heard on the issue, the Alabama Department of Public Health and Scott Harris, M.D., in his official capacity as State Health Officer (collectively, the Department), determined that Regency was operating a hospital without a license in violation of Alabama law because some of its senior independent-living residents engaged third parties—not Regency—to give them assistance with their daily living activities or other personal care issues. (The Department made this determination notwithstanding that Regency has current and valid Alabama licenses to provide assisted living, skilled nursing, and specialty assisted living services at the Regency Retirement Village.)

4.      As a result of its unilateral determination that Regency was operating

49402282 v1.doc

an "unlicensed facility" in violation of Alabama law, the Department demanded that Regency discharge—or evict—all of the senior citizens in the independent-living apartments who received any such assistance. The Department also demanded that Regency refuse to accept any future applicants to its senior independent-living apartments who receive or plan to receive *any* level of third-party assistance with their daily activities or other personal care issues. The Department threatened litigation against Regency if its demands were not met, dictating that Regency needed to evict its residents as early as November 15, 2022.

5.     The Department's demands, however, violate the federal Fair Housing Act and the Alabama Fair Housing Law, both of which prohibit Regency from discriminating against current (and future) senior independent-living residents based on their status as people with disabilities. Besides that, the actions the Department insists Regency take would render homeless approximately 60 residents of the independent-living apartments at Regency, for no reason other than age and their disabilities.

6.     As described below, Regency seeks this Court's determination that the actions the Department insists Regency take with regard to its senior independent-living residents and future residents would constitute actionable violations of the federal and state fair housing laws and irreparably expose Regency to significant civil liability under those laws and irreparably harm Regency's reputation. Regency

3

also seeks the Court's declaration that the Department has no legal authority to make the demands it has with regard to Regency's operation of senior independent living. Additionally, Regency seeks injunctive relief preventing the Department from taking enforcement action against Regency to effectuate its demands of Regency to evict any resident of independent living who needs any daily-living or health care assistance and screen future applicants to independent living for their ability to live without such assistance.

7.      Finally, Regency asserts a procedural due process claim under 42 U.S.C. § 1983 for the Department's failure to provide adequate notice or an opportunity for Regency to be heard before it unilaterally declared that Regency, through its independent-living apartments, is unlawfully operating a hospital in violation of Alabama law.

<u>JURISDICTION AND VENUE</u>

8.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this case involves federal questions.

9.      Venue is proper in this District because Regency's senior independent-living apartments and the residents and future residents of those apartments are located here.

<u>PARTIES</u>

10.      Regency is a Delaware limited liability company that leases and

operates Regency Retirement Village of Huntsville in Huntsville, Alabama.

11.    The Alabama Department of Public Health is an Alabama state agency.

12.    Scott Harris, M.D., is the State Health Officer of the Alabama Department of Public Health and a citizen of Alabama. This action designates Dr. Harris as a defendant solely in his official capacity as agent for the Department.

<u>FACTUAL ALLEGATIONS</u>

A.    *Regency Retirement Village and its Senior Independent Living*

13.    Regency Retirement Village is a collection of living arrangements for senior citizens on a multi-building campus, offering a continuum of care from senior independent living (for which residents pay Regency rent covering only room, board, and access to common area amenities) to licensed assisted living, skilled nursing, and specialty care assisted living[1] facilities for seniors.

14.    Regency operates the independent living, assisted living, and specialty care assisted living facilities in a six-story building. On the same Regency Retirement Village campus, but in another building, there is also a skilled nursing facility operated by Regency. The assisted living, skilled nursing, and specialty care assisted living facilities at Regency Retirement Village are all licensed by the State of Alabama, and specifically by the Department. These facilities are subject to significant regulatory requirements and supervision by the Department.

---

[1] Specialty care assisted living, or SCALF, is also referred to as "memory care."

15.    The licensed facilities at Regency Retirement Village have a good reputation for regulatory and licensure compliance, and that compliance is not at issue in the present dispute between the Department and Regency.

16.    Approximately 83 dwelling units on the Regency Retirement Village campus are offered by Regency to the public as "Independent Living" for seniors. The Regency Retirement Village senior independent-living apartments all have living space and sanitary facilities, and are configured as efficiency, studio, 1-bedroom, and 2-bedroom apartment dwelling units. The senior independent-living apartments are not licensed by the Department or by any other arm of the State of Alabama.

17.    Residents of the independent living apartments sign a lease agreement with Regency similar to a lease agreement for any multifamily apartment community. In exchange for monthly rent, Regency provides the residents of the senior independent living apartments housing and utilities, nutritional support through three meals per day in common dining rooms, and access to the community's common amenities, such as a game room, dining rooms, and outdoor areas. Regency does *not* provide or offer to provide personal care services of any kind to the residents of Regency Retirement Village's senior independent living apartments.

18.    Regency Retirement Village senior independent living residents can

49402282 v1.doc

come and go from their homes at their will, some using their own transportation, others taking advantage of transportation provided by Regency. The individual apartments are rented unfurnished and have locks on the primary entry doors. Senior independent living residents have their own U.S. Postal Service individual mailboxes. Senior independent living residents have no curfews or limitations on visitors, and Regency management staff can enter a senior independent living apartment only in accordance with state law regarding landlord entry. The Regency Retirement Village senior independent living apartments are functionally and legally the same as any other privately-owned multifamily residential apartment community in the state of Alabama.

19.     The Regency Retirement Village senior independent living apartments are "dwellings" as defined by law, meaning any "building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families." 42 U.S.C. § 3602(b).

20.     The independent living apartments are age restricted, in accordance with the mission of providing housing for seniors and the requirements of exemption from state and federal fair housing laws prohibiting discrimination against families with minor children. All residents of the independent living apartments are at least 55 years of age.

B.    *Alabama Department of Public Health (the Department)*

21.    The Department is a department of the government of the state of Alabama. Alabama licensed assisted living, specialty care assisted living, and skilled nursing facilities, including those licensed facilities at Regency Retirement Village, are subject to rigorous and significant regulation and supervision of the Department.

22.    Because independent living facilities like Regency do not provide health care services, Regency Retirement Village's independent living apartments are not subject to any licensure, regulation, or supervision by the Department.

C.    *The Hospice Providers and the Department's unilateral declaration that Regency is an unlicensed facility under Alabama law*

23.    As a routinely inevitable consequence of age, many of the independent living residents need assistance with their activities of daily living. Consequently, many residents desire assistance with activities of daily living from private duty nursing providers. Others require assistance with certain medical-related tasks that are appropriately performed by licensed home health or hospice providers. The need for this assistance is evidence of the presence of a "disability," as that term is defined in all federal civil rights laws, including the federal Fair Housing Act.

24.    To obtain any of these services made necessary because of a disability, Regency Retirement Village senior independent living residents make their own arrangements with third-party providers.

25.    Regency is a separate legal entity from all of the third-party providers

8

used by the independent living residents and has no legal connection to any of the providers.

26.    Some of the independent living residents receive hospice care services, performed by licensed hospice providers. The hospice providers deliver third-party services to and are contracted by the individual independent living residents. Regency is not a party those contracts and receives no benefit from those contracts.

27.    As part of its supervisory and enforcement functions, the Department recently issued a "Statement of Deficiencies and Plan of Correction" to two of its licensees, Hospice of North Alabama, LLC and Good Samaritan Hospice of Madison (collectively, the Hospice Providers). In these Statements of Deficiencies, the Department declared that the licensed Hospice Providers' contracts for services with independent living residents constitute unlawful delivery of licensed services in an "unlicensed facility," pursuant to Alabama Code § 22-21-33. In other words, the Department determined that Regency's independent living apartments are unlicensed facilities under Alabama Code § 22-21-33.

28.    Alabama Code § 22-21-33 makes it a misdemeanor for a person to operate a hospital without "a current and valid license granted by the" Department. It gives only the Department the ability to obtain "expedited" declaratory and injunctive relief requiring that the operator close its "unlicensed facility" and "move all residents or patients to appropriate placements." *Id.* § 22-21-33(a)(2).

29.    The location at the Regency Retirement Village the Department has deemed an "unlicensed facility" in these Statements of Deficiency to the Hospice Providers is the independent living apartments, where some residents have contracted with these two and other hospice providers for disability-related services.

30.    The Department did not give notice to Regency that it was deeming the independent living apartments subject to licensure under Alabama Code § 22-21-33.

31.    Nor did the Department give notice that it had determined that Regency was operating an "unlicensed facility" under Alabama Code § 22-21-33 by virtue of its senior independent living apartments.

32.    The Department never gave Regency an opportunity to be heard on whether it was operating an unlicensed facility under Alabama Code § 22-21-33 in regard to the senior independent living apartments at Regency Retirement Village.

33.    Nor does Regency have any adequate process to challenge that determination by the Department.

34.    Alabama Code § 22-21-33 provides a mechanism for only the Department to take actions based on its belief that a person or entity is operating an unlicensed facility. Nothing in § 22-21-33 provides the operator with the ability to challenge the determination by the Department.

35.    If Regency had had notice and an opportunity to be heard, it would have explained to the Department that there are thousands of senior citizens throughout

Alabama that reside in independent living facilities (like the Regency Retirement Village independent living apartments) and receive care provided by third-parties. The Department's contention that those independent living facilities with residents obtaining any type of assistance with daily living activities from third-party providers need to be licensed would result in multitudes of senior citizens having to leave their homes (independent living apartments) and relocate to nursing homes. This is a problem for many reasons, not the least of which is the impact of dislocating these individuals from their homes. The Department's position that these individuals can no longer live in their independent living apartments and instead must be evicted to a licensed facility potentially renders homeless these senior citizens—some of whom are healthy enough to live alone but require some assistance with their daily living activities but not enough assistance that it rises to the level of needing assisted living, skilled nursing, or specialty assisted living care.

36. Besides that, the Department's position would require thousands of multifamily apartment complexes throughout the state that have senior citizens who obtain third-party care to obtain a hospital license from the Department and risk penalties for failing to obtain such a license. Not only is obtaining such a license *not* actually required by Alabama law, but if the Department insists on such a license for these multifamily apartment complexes, the living costs for these seniors, who will be forced into licensed facilities, will be significantly higher.

49402282 v1.doc

D.      *The Department's Demands to Regency*

37.     In connection with the licensure actions initiated against the two Hospice Providers, the Department has demanded that Regency evict any residents of Regency Retirement Village senior independent living apartments who need *any* assistance with activities of daily living or who receive hospice care. In addition, the Department has demanded that Regency not accept any new applicants for Regency Retirement Village senior independent living apartments who need *any* level of assistance with activities of daily living.

38.     In a meeting with representatives of Regency in October 2022, the Department demanded that Regency do the following:

- "Discharge" all current residents of the senior independent living apartments who require any level of assistance with activities of daily living or medical-related tasks ("discharge" being the licensure term for what would be an eviction under landlord-tenant law in these apartments); and

- Refuse to "admit" to the senior independent living apartments any future residents who require any level of assistance with activities of daily living or medical-related tasks, requiring screening of applicants for housing and denial of housing to anyone who has a disability-related need for these services.

39.     In a subsequent October 14, 2022 communication with Regency, the Department confirmed the Department's priority that Regency "discharge individuals that are currently receiving skilled nursing care, services from a hospice, or receiving health observation and personal care with activities of daily living from

49402282 v1.doc

Senior Care of America or any other provider of health services."

40.    In pursuit of this interest, and in the same email communication, the Department specifically indicated it might consider staying the filing of an enforcement action against Regency if:

- "Regency discharges all hospice patients that are currently residing [in the senior independent living apartments] by November 15, 2022."

- "Regency discharges all residents [in the senior independent living apartments] that are receiving health observation or personal care services by Senior Care of America or any other provider of health care services by November 30, 2022."

- "Regency agrees to cease to accept new applications for the [senior independent living apartments] for 30 days. The 30 days would terminate on November 15, 2022."

- "Future residents that are admitted to Regency's [senior independent living apartments] are able to live independently without the assistance of an outside company to provider health supervision or personal care with activities of daily living."

41.    The Department has indicated that it will not have any further discussions with Regency regarding the demands made in its October 14, 2022 communication.

42.    If Regency takes the actions that the Department is demanding and evicts the subject independent living residents, Regency will suffer monetary damages, including the loss of approximately $150,000 per month in revenue provided from the rent for those independent living apartments.

49402282 v1.doc

## COUNT ONE
(Declaratory Judgment)

43.     There exists between the Department and Regency an actual justiciable controversy with respect to the matters set forth above, and as to which Regency is entitled to have a declaration of rights and further relief as set forth herein.

44.     Specifically, the Department's demands and potential enforcement of same are not authorized by law or regulation, as the senior independent living apartments at Regency Retirement Village are a private multifamily housing community not regulated or subject to supervision by the Department.[2]

45.     Further, both the federal Fair Housing Act and the Alabama Fair Housing Law make it unlawful to discriminate in the rental, or to otherwise make unavailable or deny, a dwelling to any renter because of the disability of either that renter, a person residing in or intending to reside in that dwelling after it is rented, or any person associated with that renter. 42 U.S.C. § 3604(f)(1); Ala. Code § 24-8-4(6).

46.     "Discrimination" on the basis of disability under both the federal Fair Housing Act and the Alabama Fair Housing Law includes discrimination in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of disability. 42 U.S.C.

---

[2] Alabama Code § 22-21-20 and § 22-21-22 do not include senior independent living in the list of licensed health care facilities.

§ 3604(f)(2); Ala. Code § 24-8-4(7).

47.    "Discrimination" on the basis of disability also includes "a refusal to make reasonable accommodation in rules, policies, practices, or services, when such accommodations may be necessary" to afford a person with a disability equal opportunity to use and enjoy a dwelling, under both the federal Fair Housing Act and the Alabama Fair Housing Law. 42 U.S.C. § 3604(f)(3)(B); Ala. Code § 24-8-7(g)(2).

48.    Eviction of a resident of Regency Retirement Village's senior independent living apartments who has a disability-related need for personal assistance with activities of daily living or medical-related tasks because of that need constitutes an unlawful refusal to continue to rent or make available housing because of a disability, in violation of the federal and state fair housing laws.

49.    Refusal to rent a Regency Retirement Village senior independent living apartment to a person who has a disability-related need for personal assistance with activities of daily living or medical-related tasks constitutes an unlawful refusal to rent because of disability, in violation of the federal and state fair housing laws.

50.    Denial of the right of a Regency Retirement Village senior independent living apartment resident's choice to privately contract for third-party services for personal assistance or medical-related task assistance, or interference with that choice, constitutes a refusal to allow a reasonable accommodation in rules, policies,

49402282 v1.doc

practices, or services necessary because of a disability, in violation of the federal and state fair housing laws.

51.    If Regency were to accede to the Department's demands, it would be forced to evict residents of senior independent-living apartments from their dwellings solely because of their disability status, in violation of the federal and state fair housing laws.

52.    If Regency were to accede to the Department's demands, it would be forced to refuse to allow people with disabilities to rent available senior independent living apartments solely because of those persons' disability status, in violation of the federal and state fair housing laws.

53.    Regency now faces the impossible choice of carrying out unlawful and discriminatory acts with regard to the housing of people with disabilities in violation of the federal and state fair housing laws, or defying demands made of it by the law enforcement authority of a department of the State of Alabama.

54.    Therefore, Regency requests this Court to enter a judgment declaring:

   a. That the Department does not have authority to require Regency to evict any residents of the Regency Retirement Village senior independent living apartments;

   b. That the Department does not have authority to require Regency to adopt screening criteria for applicants to Regency

Retirement Village senior independent living apartments that assesses those applicants needs for any personal care or other assistance;

c.  That the Department does not have authority to interfere with the personal choice of the Regency Retirement Village senior independent living residents to contract with independent third-parties for the provision of any personal care services or other assistance; and

d.  That Regency is not subject to any enforcement of disciplinary action by the Department with regard to the operation of the Regency Retirement Village senior independent living  apartments as described above.

<u>COUNT TWO</u>
(Temporary Restraining Order and Preliminary Injunction)

55.   The Department has made clear its intent to pursue enforcement of its demands with regard to Regency's Regency Retirement Village senior independent living apartments through legal means or other punitive action against Regency. Compliance with the Department's demands of Regency concerning the occupants of the Regency Retirement Village senior independent living apartments would cause Regency irreparable harm, including the commission of acts of unlawful discrimination in violation of state and federal law.

49402282 v1.doc

56.     Compliance would also result in irreparable harm to approximately 60 individuals with disabilities who would be unlawfully denied the opportunity to continue living in their homes, solely because of their disability status.

57.     In addition, without the requested injunctive relief, Regency's reputation (which it has spent years cultivating in the healthcare industry) will be irreparably damaged.

58.     Regency's claims in this action have a substantial likelihood of success on the merits. The Department's demands and potential enforcement of same are not authorized by law or regulation, as the senior independent living apartments are not regulated or subject to supervision by the Department.

59.     Regency's claims in this action have a substantial likelihood of success on the merits, as the actions the Department demands it carry out constitute illegal discrimination against persons with disabilities solely because of those disabilities, in violation of state and federal law. Regency has a significant interest in being in full compliance with federal and state civil rights laws.

60.     The Department is demanding Regency comply with its demands as early as November 15, 2022.

61.     The Hospice Providers working with senior independent-living apartments residents have already notified senior independent living apartments residents of the providers' intent to cease delivery of hospice services to those

residents because of the actions of the Department.

62.    Injunctive relief to Regency would serve the public interest in preventing invidious discrimination against people with disabilities, and allowing people with disabilities to make independent and empowering decisions regarding their own living situations.

63.    Restraining the Department's unlawful demands of Regency will serve to preserve the status quo of the housing for the residents of the senior independent living apartments, and the ability of new applicants to the senior independent living apartments to exercise their rights to pursue housing opportunities free of unlawful discrimination.

64.    Regency therefore asks for a temporary restraining order and preliminary injunction prohibiting the Department from:

    a.  Requiring Regency to evict any residents of the Regency Retirement Village senior independent living apartments solely because of their disability status and need for assistance with activities of daily living or medical-related tasks;

    b.  Requiring Regency to establish screening and eligibility criteria for the Regency Retirement Village senior independent living apartments that assesses, evaluates, or otherwise considers the disability status of housing

applicants; and

c.   Considering   the   Regency   Retirement   Village   senior
independent living apartments as an "unlicensed care facility"
such that the Hospice Providers are unable to deliver services
to individual residents who have contracted directly with the
providers.

<u>COUNT THREE</u>
(Violation of 42 U.S.C. § 1983)

65.    Regency has a Constitutional right under the Fourteenth Amendment to
a full and fair hearing before the Department declares Regency an "unlicensed
facility" under Alabama Code § 22-21-33 that needs a license from the Department.

66.    Part of having a full and fair hearing is the Department providing
reasonable notice of the claims asserted against Regency.

67.     Here, as explained above, the Department (a state actor) has failed to
provide fair and adequate notice that it has determined that Regency is an unlicensed
facility under Alabama Code § 22-21-33 and therefore potentially subject to criminal
liability.

68.    The Department has denied Regency due process of law because it has
failed to provide Regency with fair and adequate notice of its charges against
Regency.

69.     The Department has deprived Regency of its constitutionally-protected liberty and property interests, including its interests in its contractual lease agreements with its independent living residents.

70.     The Department's process is constitutionally inadequate.

71.     Regency lacks an adequate process to challenge the Department's determination that it is an "unlicensed facility." Indeed, other than subjecting itself to potential criminal liability or an enforcement action, Regency has no other mechanism to challenge the Department's determination than to allow the Department to sue it under Alabama Code § 22-21-33.

72.     Every day that goes by with the Department having declared that Regency is an "unlicensed facility" in violation of Alabama law without giving Regency notice and an opportunity to be heard on the issue before the Department decided to label Regency an "unlicensed facility" (which has caused providers to refuse to work with Regency Retirement Village residents and has harmed Regency's reputation) is an on-going violation of federal law, as explained herein.

73.     Therefore, Regency requests this Court to enter a judgment:

   a.  Entering the injunctive relief set out in Count 2 of this complaint; and

   b.  Attorneys' fees pursuant to 42 U.S.C. § 1988.

49402282 v1.doc

<u>PRAYER FOR RELIEF</u>

Regency requests the following relief:

I.      A judgment declaring that the Department has no authority to supervise, regulate, or otherwise direct the actions of Regency with regard to the operation of the senior independent-living apartments, and that Regency's Regency Retirement Village senior independent-living apartments are not subject to any enforcement or disciplinary action from the Department.

II.     A temporary restraining order and preliminary injunction prohibiting the Department from requiring Regency evict any residents of the senior independent living apartments or adopt any screening criteria for new residents of the senior independent living apartments that considers the applicants' disability status or disability-related needs, and prohibiting the Department from taking any action that would prohibit the senior independent-living apartments residents from independently contracting for services from any personal care or hospice provider.

III.    Attorneys' fees pursuant to applicable statutes, including 42 U.S.C. § 1988.

IV.     Such other and further relief that this Court deems just and appropriate.

Respectfully submitted,

*/s/ Marcus M. Maples*
Marcus M. Maples (ASB-5283-S81M)

**OF COUNSEL:**
BAKER DONELSON BEARMAN,

CALDWELL & BERKOWITZ, PC
420 20th Street North,
Shipt Tower, Suite 1400
Birmingham, Alabama 35203
Tel:   (205) 328-0480
Email:  mmaples@bakerdonelson.com

/s/ Angela C. Smith
Angela C. Smith (ASB-5584-N65C)

**OF COUNSEL:**
BURR FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Tel:   (205) 458-5209
Email:  acsmith@burr.com

*Counsel for Huntsville Senior Services, LLC
D/B/A Regency Retirement Village of
Huntsville*

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the above with the Clerk of Court using CM/ECF system, on this 10th day of November, 2022, which will send notification of such filing to all counsel of record below:

Dana Billingsley, Esq.
Sancha Howard, Esq.
Valeria Russell, Esq.
Alabama Department of Public Health
P. O. Box 30317
Montgomery, AL 36130-3017
Dana.billingsley@adph.state.al.us
Sancha.howard@adph.state.al.us
Valerie.russell@adph.state.al.us

/s/ Marcus M. Maples
MARCUS M. MAPLES

23

49402282 v1.doc

## VERIFICATION

With full authority, the undersigned, Tim Taylor, who is the Executive Director of Regency Retirement Village and is personally familiar with the allegations of the complaint, hereby declares under penalty of perjury that paragraphs 1-6, 9, 12-23, 25-42, 55-56, and 60-61 of this amended complaint are true and correct.

Executed on November 10, 2022.

TIM TAYLOR

49402282 v1.doc